Judge JBucknek,
delivered the opinion of the court.
This was a suit in chancery, instituted by Archibald Huston, against Alexander Noble. The complainant dying before its termination, it was revived in the name of David Huston and Elizabeth Huston, his executor and executrix.
On the 25th day of February, 1819, the said Archibald, and Noble, entered into written articles of *131 agreement, witnessing that Noble had sold unto Huston two lots of gi'ound, in the town of Petersburgh, in this state, known in the plan of the town, by Nos. 65 and 71. Possession of them was to be delivered by the 15th of March of that year, and Noble to cause a deed or deeds therefor, to be executed in the month of April, 1820.
Huston by said writing, bound himself to pay to Noble as the price of the lots, four hundred dollars, in Petersburgh, Burlington, or Newport bank notes, in the following manner: $1150 to be paid by the 15th of March next, after the date of said writing; ‡10 to be paid to John Flournoy, in April, 1820, and the remainder in April, 1821.
Possession was delivered according to contract; and on the 17th of March, 1819, Huston executed his note to Noble for $210, payable on or before the first of April, 1821. A man, by the name of Smith, was the subscribing witness to the articles of agreement and the note,
Huston having failed to pay this sum of §210, was sued by Noble, and judgment recovered for the full amount.
Huston then filed this bill in chancery, setting forth the foregoing facts, alleging that the note was executed for dollars, by mistake, omitting to state, that it was to be paid in notes, on the banks of Petersburgh, Burlington or Newport, which was the contract; that he had paid to Noble the $150, and the $40 which be had agreed to pay to Flournoy, and had tendered the $210 due in that kind of paper, which Noble refused to receive, demanding the whole sum in specie, which notes, he still held subject to the order of the court. He also alleged that Noble had failed to make the conveyance, and that he had no title to either of the lots; upon one of which he (complainant) had made lasting and valuable improvements. On account of the residence of Noble, in the state of Indiana, he had no opportunity of sueing him, for a violation of his covenant.
The prayer of the bill is, that an injunction be granted against the judgment, and Noble compelled to receive notes according to the true contract in discharge thereof; (if it should appear to be equitable) to decree a rescisión of the contract, allowing to the complainant *132 a. compensation for the improvements and a decree for the value of the $190, paid in bank notes, which, at the time of payment, it is alleged, were nearly equal to, specie, although they had afterwards greatly depre-. dated.
An order of publication against Noble as a non-resident having been advertised, he filed his answer, which was evasive; and in one important particular, which will be hereafter noticed,,acknowledged by him, to be untrue. He says that it may, or may not be true, that such an article of agreement was executed, or that he bound himself to convey the lots, by the time named in the bill of complainant.- He admits, that the sum of $400 was the price agreed upon for the lots, payable in such bank paper as that described by complainant; $150 of which were paid about the 15th of March 1819. He denies that the $40 named, had been paid to Flournoy, or to himself. He does not expressly assert, that the complainant and himself, had made any agreement from the time of making the original contract, that any part of the $400 should be paid in any other kind of money, than that at first stipulated to. be paid, but evidently attempts' by his answer, to make such an impression.
He says, “Your respondent expressly denies, that the said note dated the 17th of March 1819, was intended by its stipulations, to accord with the article of agreement, alluded to by complainant; but your respondent would beg leave to state, in explanation, as to- .the charge of mistake or omission therein, that it was to be paid in Burlington paper, &c.; that at the time, said note was executed, a balance to the amount thereof was then due, by virtue of said article of agreement, to respondent. At the representations of the complainant, that the times were hard, #c. the respondent agreed to, give further time, to the complainant, <^c.” He denies that there was any agreement, that it should be drawn fpr the same kind of money, which was called for, by the articles of agreement.
With respect to the conveyance of the lots, he says that Flournoy refused to make a deed to one of them, until the $40 should be paid; the non payment of which by Huston, was the only obstacle to the procurement of jt, That as to the other lot, he. had in his possession *133 &q order from Flournoy to the trustees of'Petersburgh, to make respondent a deed for it, being No. 71, and was willing to transfer to Huston said order, or to cause the trustees to make a deed for it to him, whenever the sum of forty dollars was paid; that he was willing in like manner upon payment of said sum, to cause the trustees to convey to complainant lot No. 65, $40 being the sum agreed to be paid to Flournoy, for said lot, by one Myers, from whom the respondent had purchased it.
After an unsuccessful attempt had been made upon this answer to dissolve the injunction, the affidavit of the attorney of the appellee was filed, stating that the answer had been written in great haste, during the session of a court, which he was attending, without consulting his client, and was read to him only once, before it was sworn to.
Upon this, leave was given to amend the answer. In the amendment Noble acknowledges, that the $21,0 were not due at the time the note was executed; that he had not, when he filed his answer, seen the articles of agreement for a considerable time, and made the mistake innocently. He denies that the note was written for dollars by mistake, and says that he had never conceived it was to be discharged in anyidnd of money, except that which it called for; and that Huston had often promised to discharge the noté in paper of the commonwealth’s bank, if he would wait until it got into circulation.
Although the lawyer who drafted the answer may innocently have been deceived under the circumstances stated, the drawing of an answer without consulting the client, was very unjustifiable. But the facts stated, form a very flimsy and unsatisfactory excuse for the client. He was called upon to answer in relation to an important point. If he did not recollect the contents of the agreement, as reduced to writing, he should have stated it, or not have sworn until he had satisfied himself, that he was stating the truth. His answer evinces throughout a disposition to evade it, and keep out of view the true contract.
Upon the hearing of the cause, a decree was entered, dismissing the bill, absolutely; each party paying *134 his own costs; from which the executor and executrix prayed an appeal.
Notice to take deposi-ions, without date, is insufficient.
Though parol canílot be re peived to vary or contradict á written con-may bc^re-ceivedtoshow the contract was, by fraud or mistake, ■ written differently from what the parties intended, and the court will relieve against such written instra-' ment.
*134 The appellants objected to the reading of the depositions taken on the part of the appellee, because the notice, under which they were taken, was insufficient, being without date. The objection to them ought to have been sustained; but their admission cannot materially affect the case. They prove that the Peters-burg]! bank stopped payment in 1819; some short time after which the paper of it had depreciated to about twenty-five cents in the dollar.
They prove also, that the trustees of the town of Pe-'tersburgh had executed a deed, dated 12th of July, 1825, to the defendant for lot No. 71, which had not been recorded; and that a man by the name of Jacob Myers had given an order to John Flournoy in favor of Noble, to make to him a conveyance for lot No. 65.
The depositions were taken, we presume, to prove the ability of Noble to comply with his contract. But they are obviously insufficient for that purpose. The order from Myers had not been accepted by Flournoy, nor was there any proof that he was the proprietor of the town; that he was invested with the legal title to the lots. We do not however, conceive that the allega-, tions of the bill, respecting the title, and the proof, such as demand a rescisión of the contract. The ability of the defendant, to make a valid title to the one lot, and to cause one to be made to the other, is very probable. At all events, it is too much so, to demand a rescisión, without further explanation.
The appellants have not demanded of the appellee-an exhibition of title; nor have they attempted to point outanyparticular defectoftitle. - Themainobjectofthe bill is to compel him to accept bank notes in discharge of his judgment. But that the note was written different from the contract by an oversight in the draftsman 0J^ an<^ execufe(i for dollars by mistake of the parties, is, we presume, too apparent from all the circumstances of the case, as exhibited by the bill, answers and proof, to admit a serious doubt. In coming to conclusion, we have not violated the well established doctrine, that parol testimony cannot be received to contradict or vary the written contract., *135 The covenant signed by both of them, shows, that the entire price of tire lots, was to he discharged in Pe-tersburgh, Burlington, or Newport notes. There is not the slightest evidence, except that which the note furnishes, that the contract was afterwards changed.
The offer to pay an uncertain sum, not known to be equal to the debt, not a legal tender, nor is a tendel of bank notes, payable on a day, after the time elapses; sufficient;
At the time of the execution of the note, there was no reason or inducement which could have operated on Huston, to consent to pay specie in lieu of them. He obtained no further indulgence by doing so. The defendant does not venture to state in his second, hdw-ever he may have intended to hold out a different impression, in his first answer, that there was any agreement that the note should be worded as it was, or that there should be any change in the contract as originally made.
The same man who wrote the covenant containing the articles of reement, wrote the note also, on which the judgment was recovered. He says, that when the former was about to he prepared, he was particularly requested by Noble, to specify notes on the banks of Petersburgh, Burlington and Newport; as he was not willing to take the paper of any other bánk. The instrument was worded according to his request, and in pursuance of the contract.
When he wrote the note, the contracting parties gave him no directions, as to the manner of drawing it. The only reason he could assign, why it was written as it is, was, that as the covenant of agreement was express in relation to that matter, he deemed it unnecessary to repeat it, in the note.
It appears from the proof, that in the fall of 1821, Huston tendered to the appellee notes on the Peiers-hurgh bank, in discharge of his obligation for the $210. He at first attempted evasion, by saying that he had not the note with him; Huston insisted on making the payment nevertheless. He then refused to receive the notes.
It cannot, however, he considered as a legal tender. The witness did not know the amount of the bank paper, offered in payment. But if the proper sum had been tendered, the appellee was not bound to accept them, as the day of payment was past. He was a non-resident of this state; hut lived only ten or eleven *136 miles from the residence of the obligor; who knew where to find him, and had opportunities of making a in due form and time.
If bank notes be not paid day th"!measure of‘recovery ÍS *thirtVdlue 011 a ay‘ •
V on a bill for rescisión of contract defect'of title in vendor, heirs of ven-dee must be >par res.
■Denny, for appellants.
We are of opinion however, that the mistake charged in the bill, is well established. It would therefore, be manifestly unjust, to permit th'e appellee to coerce payment of his judgment in specie, to its full amount; yet it would not be proper to compel him at this time, accePt *he paper of those banks, which, from the evidence in the causé, it is probable, has depreciated, since the note sued on, fell due. As the bank paper was not punctually tendered, Huston’s'estate is answerable for the value 'of it, when it should have been páid. For all, exceeding that sum, the injunction should be made perpetual.
’H, ñpóft being demanded to exhibit the testimony of his title to the property sold, the appellee shall be un-abite to shew, that he can convey a valid legal title, and ^ to ma^e such conveyance uptm the payment of the money justly due to him; the contract ought to be rescinded. Buf such a decree Cannot be properly jQ^de, unless the heir or heirs of Huston be made par-yes< p>y a resCisi0n, their interest would be directly affected; and to authorize such a decree, it is indispensable, that they should be before the court.
For the reasons mentioned, in relation to the mistake in the note, the decree of the circuit court must be reversed, and the cause remanded with directions to permit the heirs to become parties to the suit, if it be desired. If no application for that purpose be made, the injunction must be perpetuated, to the extent already stated, and dissolved for the residue, with dam■ages.